THOMAS ALDRIDGE, appellant,

*v.*

SARAH J. McCLELLAND, respondent.

1. Upon the removal of an executor, it is his duty to immediately deliver to the administrator with the will annexed, appointed in his stead, all goods and chattels, moneys and effects, in his hands, belonging to the estate.

2. That part of the 130th section of the orphans court act, which directs that the removed executor shall settle his account at the next term of the court, and pay over the balance to his successor within sixty days, is not inconsistent with that part of the same section, which directs that he shall immediately after removal, deliver the moneys then in his hands.

3. The object of the statute is at once to get all the property of the estate out of the hands of the removed executor, and transfer it to his successor, who has given bond, and this applies to moneys which it is ascertained by his admission, or otherwise, he holds.

Aldridge v. McClelland.

4. Should it happen that, on final settlement, there be money required to pay debts or costs of settlement, the administrator with the will annexed will be ordered by the orphans court to pay the same.

On appeal from a decree of the prerogative court.

Thomas Aldridge, the appellant in this cause, was, in the last will and testament of Richard Parkes, deceased, constituted and appointed by the testator as the executor thereof, and clothed with certain powers and trusts as therein stated &c. Said Aldridge was duly qualified as such executor upon the probate of said will before the surrogate of the county of Essex, and assumed the duties of his office. It appears that, on the 12th day of February, 1878, an order was made by the Essex orphans court requiring said Thomas Aldridge, as such executor, to give bond, with securities, in the sum of $6,000, to the ordinary &c., for the faithful performance of his duty under the said will. It appears, also, that from said order to give bond &c., an appeal was taken by said Aldridge to the prerogative court, and that, upon the hearing of said appeal, the said order of the orphans court was affirmed by the prerogative court.

It appears that thereupon an appeal was taken by said Aldridge from said order of affirmance to this court, and that his said appeal was dismissed by this court, and that thereupon the matter was regularly remitted to the said orphans court, on April 29th, 1879. It further appears that, on May 20th, 1879, an order was made by the said orphans court upon the said Thomas Aldridge, that he show cause to the said court, on June 3d, 1879, why the letters testamentary issued to him as such executor should not be revoked and he be removed from his said office as such executor, for failure &c., to give said bond as aforesaid. It also appears that, on May 21st, 1879, the said Thomas Aldridge filed with the surrogate of Essex county his intermediate account as said executor, showing a balance in his hands of $1,880.47, less $6 paid for advertising settlement, and less also the sum of $17.80, paid surrogate for expenses on said ac-

Aldridge *v.* McClelland.

count, leaving actually in his hands the sum of cash, $1,856.67.
It also appears, from his said account, that all the moneys so as
aforesaid in his hands are moneys received by him from the sale
of real estate made by him under the powers and trusts of said
will.   It also appears that, on July 8th, 1879, the said Aldridge
having failed to give bond as aforesaid, the said order to show
cause, of May 20th, 1879, was made absolute by the said orphans
court, and an order was thereupon made by the said court " that
the letters testamentary heretofore issued to the said Thomas
Aldridge, as such executor as aforesaid, be revoked, and that
said Thomas Aldridge be removed from his office as such ex-
ecutor, and that Elwood C. Harris be appointed administrator *de
bonis non cum testamento annexo* of Richard Parkes, deceased."
It also appears that the said order, made as aforesaid on July
8th, 1879, having been served upon said Aldridge, the said court
did, on July 15th, 1879, make order upon the said Aldridge to
pay over &c., to said Elwood C. Harris, administrator &c., as
therein recited.  And this order of July 15th, made as aforesaid,
is the order upon which the appeal from said orphans court to
the prerogative court was taken, from so much thereof as orders
" that the said Thomas Aldridge immediately deliver over to the
said Elwood C. Harris, as such administrator *de bonis non &c.*,
the sum of eighteen hundred and eighty dollars and forty-seven
cents, the amount which the said Thomas Aldridge admitted
was in his hands as such executor."

And the said prerogative court having affirmed the said order
of the said orphans court in all things, with costs, and having
ordered that the record be remitted to said orphans court, there-
upon the said Thomas Aldridge appeals from the said preroga-
tive court to this court.

· *Mr. Theodore Ryerson,* for appellant, cited—·

*Griffith* v. *Beecher, 10 Barb. 432 ; 2 Wms. on Exrs. 1496 ;
1 Wms. on Exrs. 579 ; 1 Sugd. on Powers 128 ; Doe* v. *Shotter,
8 Ad. & El. 905 ; Dabney* v. *Manning, 3 Ham. 321 ; Haskell
v. House, 3 Brev. 242 ; McDonald* v. *King, Coxe 432 ; Aston's*

*Estate,* 5 *Whart.* 228 ; 1 *Watts* 370 ; *Ross* v. *Barclay, 18 Pa. St. 179 ; 2 Wms. on Exrs. 865, note 1 ; Neal* v. *Hagthrop, 3 Bland 557 ; Potts* v. *Smith, 3 Rawle 361 ; Bell* v. *Speight, 11 Humph. 451 ; Swink* v. *Snodgrass,. 17 Ala. 653 ; Conklin* v. *Egerton, 21 Wend. 430, 450 ; 25 Wend. 224, 242 ; Brush* v. *Young, 4 Dutch. 242 ; Howell* v. *Sebring, 1 McCart. 84.*

*Mr. John Whitehead,* for respondent, cited—

*Rev. 781* §§ *129–30 ; Meakings* v. *Cromwell, 1 Seld. 139–40 ; Chambers* v. *Tulane, 1 Stock. 146, 157 ; Matter of Anderson, 5 N. Y. Leg. Obs. 302 ; Zebach* v. *Smith, 3 Binn. 69 ; Peter* v. *Beverly, 10 Pet. 533–565 ; 4 Kent Comm. (10th ed.) 589–599 ; Davon* v. *Fanning, 2 Johns. Ch. 254 ; Bogert* v. *Hertell, 4 Hill (N. Y.) 497 ; Sugd. on Powers 160–165 ; Powell on Devises 197 ; Farwell* v. *Jacobs, 4 Mass. 636 ; Conover* v. *Hoffman, 1 Bosw. 214.*

The opinion of the court was delivered by

PARKER, J.

On the 22d day of October, 1872, Richard Parkes, of Bloom-field, N. J., executed his last will, in which he appointed the appellant his executor.

After the will was probated, such proceedings were had in the orphans court of the county of Essex that, on the 12th day of February, 1878, an order was made requiring the appellant to enter into bond as such executor, with sureties, in the sum of $6,000, on or before the 19th day of the same month.

There was an appeal from that order, but the prerogative court affirmed it, and upon further appeal to this court, the decree of the ordinary was affirmed.

The appellant having failed to obey the order of the orphans court requiring him to give bond, on the 20th day of May, 1879 a rule was entered, directing him to show cause, on the 3d day of June then next, why the letters testamentary which had been issued to him should not be revoked.

The appellant still refusing or neglecting to give bond, on the 8th day of July, 1879, the orphans court made an order removing him from the executorship, and appointing Elwood C. Harris in his stead as administrator *de bonis non cum testamento annexo*.

A few days before the order of removal was entered, the appellant filed in the office of the surrogate an account of his receipts and disbursements as executor. In this statement of account, which was made under oath, the appellant acknowledged that there was in his hands, as executor of Richard Parkes, deceased, and belonging to the estate, a balance of $1,880.47.

The newly appointed administrator, having qualified, perfected his bond, and entered upon his duties. The orphans court, on the 15th day of July, 1879, made an order that the appellant immediately deliver to Elwood C. Harris, his successor, the said sum of $1,880.47 (the amount he admitted to be in his hands), with the qualification embodied in the order that such delivery should be without prejudice to him, or to the several parties who might appear to be interested in the final settlement.

From the order last named the appellant appealed to the prerogative court, where it was affirmed, and this decree of the prerogative court is now brought by the appellant to this court for review and adjudication.

The chief reason urged for reversal is grounded on the assumption that the appellant held the money in question, not as executor, but as trustee, and it is said that not having been removed as trustee, the orphans court had no power to order him to deliver such trust money to the administrator with the will annexed.

. Whether this would be a good reason for reversal, if the facts supported it, it is not necessary to inquire.

The will of Richard Parkes does not bear the construction contended for by the appellant. After devising certain lands to the respondent in fee, and the use of other lands for her natural life, the testator directs the executor to sell the residue of his

16

real estate, and pay over the proceeds. He does not authorize the holding of the proceeds in hand, in trust for any object. The will gives no more than the ordinary naked power to an executor to sell lands.

Nothing is to be done with the estate which the administrator with the will annexed cannot do.

The 129th section of the orphans court act (*Rev. 781*), and the 11th section of the " Act concerning executors and the administration of intestates' estates " (*Rev. 398*), confer on the successor of a removed executor all the powers such executor originally possessed for the administration and settlement of the estate.

From an examination of the account filed by the appellant in the surrogate's office, it is evident that he considered that he held the moneys in his hands as executor for the purposes of the estate, and not as trust-moneys. He first charges himself with the amount of the inventory and appraisement ($1,105), and the only other item on the debit side is for moneys received from sale of lands ($3,631.50), making a total of $4,736.50.

He then prays allowance for debts paid out of this common fund ($2,856.03), leaving in his hands a balance of $1,880.47. In no part of the account does it appear that the appellant claimed to hold any part of the moneys on any special trust. The funds derived from the personal and from the real property are intermingled in the account, and together produce (after payment of debts) the balance he was ordered to deliver to his successor, and which the account states he holds in his hands as executor.

The next reason urged for the reversal of the decree is, that proceedings were commenced in the United States circuit court, under which an injunction was obtained by some of the legatees, forbidding the appellant disposing of any of the moneys. This question was not raised in the orphans court, and there is no evidence here of the facts alleged. Before the pretended proceedings were instituted, the orphans court had taken jurisdiction, and has never been ousted of such jurisdiction. It is also said that the order appealed from was made *ex parte* and without notice to the appellant, and therefore is illegal. Inasmuch as

Aldridge v. McClelland.

this objection was not raised by the petition of appeal to the prerogative court, it is not properly before us.

But supposing the question properly raised here, how does it appear that the appellant was not present when the order was made? He had been served with a rule to show cause why his letters should not be revoked. It was his duty to be present on the return of that rule. No cause being shown to the contrary, he was removed. The inevitable legal consequence of the removal was the order to deliver the property to his successor as soon as he was qualified. In fact, the order to deliver over is properly part of the order of removal of the application for which the appellant had notice. Until the contrary appears, he is presumed to have been present. So long as the order of removal stands, the direction to deliver over is by statute a necessary consequence which cannot be avoided, whether present in court in person or not.

The language of the 130th section of the orphans court act (*Rev. 781*) is imperative. It provides that upon the removal of an executor he shall *immediately thereafter deliver over* to the newly appointed administrator with the will annexed all goods and chattels, *moneys* and effects &c., which he shall hold. It will be observed that moneys are included among the property to be delivered.

In this case the sum of money belonging to the estate in the hands of the executor, had been ascertained by the admission of the appellant. It was not only lawful, but eminently proper, for the orphans court to direct its immediate delivery by the removed executor to his successor. His duties as executor were at an end. His power to pay the money to the parties interested in the estate was gone. It was in his hands, without security for its safe custody. His successor had given bond, and had power to dispose of the fund as fully as if he had been the original executor. It was the duty of the court, in such case, to see that the money was at once transferred. In no other way could the court protect the persons interested in the estate. The executor had refused to give security, had disregarded the decrees of the court, was liable to attachment for contempt, had been re-

moved, and if the court had, under these circumstances, omitted to make the order appealed from, not only the spirit, but the letter of the statute would have been violated.  Courts cannot be too vigilant and prompt in using all the means the law has provided in dealing with executors and administrators who have been adjudged derelict.

The provision of the 130th section of the orphans court act, which directs that the removed executor shall settle his account at the then next term, and within sixty days pay the balance, is not inconsistent with that part of the same section which directs that he shall, immediately after removal, deliver over the moneys then in his hands.  The object of the law is to get out of the hands of the removed executor all property it is then ascertained he has, and if, upon settlement of the account subsequently, it shall appear he still has a balance, to have him deliver that also to his successor.  If it should appear, at the settlement, that the removed executor had, by mistake, delivered over too much money, the orphans court would direct the administrator with the will annexed to refund the same.  It was for that reason, that in this case the clause " without prejudice &c." was added to the order.

It is further objected that the order directs the delivery of too large a sum of money, because $23.80 will be required to pay surrogate's and court's fees on settlement of the final account, which should have been deducted.

This objection was not taken in the petition of appeal to the prerogative court, and is now interposed for the first time.  The sum directed to be delivered over was taken from the executor's statement; but if it should appear, on the settlement, that the surrogate and court have not been paid, the administrator with the will annexed should be directed by the orphans court to pay them.

Upon examining the items of the account filed in the surrogate's office, it appears that there was a larger sum belonging to the estate in the hands of the executor, at the time of his removal, than he was ordered to deliver.  He prays allowance for $219.46 as commissions.  The 113th section of the orphans court

act (Rev. 776) expressly provides "that a removed executor forfeits his commissions and all compensation for his services." The decree of the ordinary is affirmed, with costs.

